IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jerry Alexander Canzater, #248373, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>Warden Padula; Associate Warden Bell; )<br>Classification Ms. Hilton; Classification Mr. )<br>Oberman, )<br>)<br>Defendants. )<br>_____ ) | C/A No. 0:09-2197-HMH-PJG<br><br><br><br><br>**REPORT AND RECOMMENDATION** |

The plaintiff, Jerry Alexander Canzater ("Canzater"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 alleging that the defendants violated the Eighth Amendment to the United States Constitution by failing to protect him and by subjecting him to cruel and unusual punishment through deliberate indifference to his medical needs. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the parties' cross-motions for summary judgment. (Docket Entries 26 & 37.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Canzater was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (Docket Entry 38.) Canzater filed a response. (Docket Entry 40.) Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted and Canzater's motion should be denied.

**BACKGROUND**

Viewed in the light most favorable to the plaintiff, the following facts are relevant to the resolution of these motions. At all times pertinent to the allegations in this Complaint, Canzater was

housed at Lee Correctional Institution. Following the loss of his prison job, Canzater was moved from Kershaw Dorm to Darlington Unit. Canzater attests that upon arriving in the Darlington Unit, he notified Associate Warden Bell that he "had enemies" in that unit that may cause him harm. (Canzater Aff. ¶ 3, Docket Entry 40-1.) He avers that he was attacked by five other inmates on February 3, 2009, but that he did not believe that he needed protective custody at that time and therefore did not request it. (Id. ¶ 15.)

Canzater generally alleges that his safety concerns were not taken seriously and although his concerns were taken before the Institutional Protective Concern Committee ("the Committee"), Canzater does not believe that it conducted a thorough investigation. It appears that Canzater was first placed in protective custody in May 2009, after he was threatened by two inmates with a knife and robbed of his walkman and ear buds. The Committee returned Canzater to the general population based on its determination that Canzater was no longer in danger and Canzater's statement that he no longer feared for his safety. (See Oberman Aff. ¶ 4, Docket Entry 37-5, Hilton Aff. ¶ 4, Docket Entry 37-6.) Canzater states that Defendants Oberman and Hinton convinced him that he was safe. (Canzater Aff. ¶ 6, Docket Entry 40-1.)

Canzater asserts that he received more threats around June 9, 2009, which he reported to the shift supervisor, who told him to make a written statement. (Id. ¶ 7.) Canzater complied and was returned to protective custody. (Id.) On June 11, 2009, the Committee reviewed Canzater's allegations and, after determining that Canzater failed to present any evidence corroborating his allegations, ordered him to be returned to the general population. Canzater states that he refused to return to the general population and was charged with a disciplinary infraction for refusing to obey. Canzater states that he returned to the general population against his will, where he avers that he was

assaulted by four gang members, two of whom were previously involved in stealing his walkman. (Id. ¶ 12.) Canzater asserts that as a result of this attack in June 2009 he sustained physical and mental injuries, which were left untreated for several months. Finally, Canzater states that after this incident he was placed in protective custody, but the Committee refused to assess his concerns regarding this incident.

## DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth

specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Exhaustion of Administrative Remedies**

As an initial matter, the defendants contend that this matter should be dismissed because Canzater has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See Booth v. Churner, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's

requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Pursuant to SCDC policy, an inmate seeking to challenge a disciplinary conviction or complain of prison conditions may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." The defendants have submitted the affidavit of Mary Coleman, a Branch Chief of the Inmate Grievance Branch for the South Carolina Department of Corrections ("SCDC"). (See Docket Entry 37-8.) Coleman attests that she has access to the grievance files for various correctional institutions, including Lee and Kershaw, where Canzater is now housed. (Id. ¶ 2.) Coleman attests that Canzater filed grievance number 1903-09 on July 8, 2009 complaining that the Committee had wrongfully returned him to the general population on June 11, 2009. Taylor attests that this grievance was returned unprocessed, as it was filed outside the fifteen-day deadline established by the grievance process. (Id. ¶ 4.) Coleman attests that Canzater submitted grievance number 2387-09 on August 24, 2009, again challenging the Committee's decision to return him to the general population. This grievance was also returned unprocessed for failure to timely file the grievance. (Id.) Coleman attests that Canzater did not attempt to file a Step 2 grievance with regard to either of these grievances and that Canzater did not administratively exhaust the claims raised in these grievances. (Id.) Coleman further attests that Canzater filed grievance number 2620-09 on September 18, 2009 concerning a disciplinary charge for failure to follow orders, which was returned unprocessed

because Canzater attempted to grieve a disciplinary charge before the disciplinary hearing was held. (Id.)

In response, Canzater generally complains about the grievance process and states that he filed several unprocessed grievances and sent requests to staff. He also contends that he timely filed a Step 1 Grievance challenging the June 11, 2009 decision of the Committee; however, he was informed by the grievance coordinator that this grievance was never received. Canzater states that he then submitted a new grievance that was returned unprocessed because he exceeded the time frame to file a grievance on that issue. (Canzater Aff. ¶ 14, Docket Entry 40-1.) Canzater does not appear to dispute that he failed to file any grievance concerning his medical allegations contained in this Complaint.

The only evidence of record shows that Canzater has not fully and properly exhausted his administrative remedies regarding any of the claims in this matter. Not only must Canzater use all the steps that are available to him to exhaust his administrative remedies, but he also must do them properly. See Woodford, 548 U.S. at 81. Canzater has not properly exhausted all the steps available to him at SCDC. (See Coleman Aff., Docket Entry 37-8); Jones, 549 U.S. at 217-18 (stating that the exhaustion requirement is "not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy") (citing Woodford, 548 U.S. at 93-95). Although Canzater contends he has filed several unprocessed grievances and that he submitted a grievance that was never received, he has failed to provide any copies of these grievances in support of this argument. The only evidence of record shows that he did not follow through with those grievances and avail himself of the administrative remedies offered by the Department of Corrections. Notably, Canzater does not appear dispute that failed to file any grievance concerning his claim for medical

indifference raised in this Complaint[1] or that he did not filed a Step 2 grievance with regard to his failure to protect claim. Therefore, the court recommends that this matter be dismissed based on Canzater's failure to exhaust his administrative remedies.

**C.    Merits[2]**

  **1.    Deliberate Indifference Generally**

Alternatively, the defendants contend that they are entitled to summary judgment on the merits of Canzater's claims. To establish a failure to protect claim or medical indifference claim under the Eighth Amendment, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). To be liable under this standard, the prison official "must both

---

[1] Canzater attaches to his response in opposition to summary judgment a grievance that he filed alleging that his request for "sick call" on November 15, 2009 was not adequately responded to and that when he was seen by the nurse not all of his ailments were treated. Canzater also includes a general complaint about medical care. (See Docket Entry 40-2.) This grievance does not demonstrate that Canzater has exhausted his administrative remedies as to his claim in this case, which alleges medical indifference with regard to the treatment of his alleged back injury.

[2] The court notes that in response to the defendants' motion for summary judgment, Canzater states that he is suing the defendants solely in their individual capacities. (Docket Entry 40 at 7-8.)



be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842. "While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, . . . he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." Id. at 843 n.8. Further, a showing of mere negligence does not suffice to establish deliberate indifference. See Davidson v. Cannon, 474 U.S. 344, 347 (1986); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Finally, the plaintiff must show he suffered a serious or significant physical or mental injury as a result of the defendants' conduct. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993).

### 2. Failure to Protect

The parties agree that after Canzater was robbed by other inmates in May 2009, he was placed in protective custody. There is no indication in the record or by Canzater that he was physically harmed by this attack. The Committee reviewed Canzater's allegations and, based on Canzater's statement that he does not fear for his life or safety, the Committee returned Canzater to the general population. (See Docket Entry 37-3.) While Canzater alleges that he was "convinced by Mr. Oberman and Ms. Hilton that since [the inmates] had taken my walkman and ear buds that they wouldn[']t mess with me anymore, because they got what they wanted," he does not dispute that

he told the Committee that he was not fearful for his life or safety. (Canzater Aff. ¶ 6, Docket Entry 40-1.)

It is also undisputed that after Canzater submitted a written statement around June 9, 2009 alleging that he had received more threats, he was immediately returned to protective custody. (Id. ¶ 7.) The Committee investigated Canzater's allegations and determined that Canzater had failed to produce evidence supporting his claim. (Bell Aff. ¶ 7, Docket Entry 37-4; see also Oberman Aff. ¶ 4, Docket Entry 37-5; Hilton Aff. ¶ 4, Docket Entry 37-6.) Canzater alleges that after he was returned to general population, he was physically attacked by four inmates and, as a result, he sustained back injuries.[3] (Canzater Aff. ¶ 12, Docket Entry 40-1.)

While Canzater may be able demonstrate that the defendants could infer that a substantial risk of serious harm existed based on his allegations that he feared for his life, Canzater cannot demonstrate that such an inference was in fact drawn or that the risk was obvious. See Farmer, 511 U.S. at 837, 843. The Committee, upon which Defendants Oberman and Hilton both serve, reviewed Canzater's allegations and determined that Canzater had failed to produce evidence supporting his claim. (See Bell Aff. ¶ 7, Docket Entry 37-4; see also Oberman Aff. ¶ 4, Docket Entry 37-5; Hilton Aff. ¶ 4, Docket Entry 37-6.) Canzater appears to dispute the adequacy of the Committee's investigation; however, he has not provided any evidence supporting this allegation. Therefore, viewed in the light most favorable to Canzater, the record shows no evidence that the defendants had knowledge of any substantial risk of harm to Canzater. Accordingly, Canzater's claims that the defendants violated his Eighth Amendment rights fail as a matter of law.

---

[3] The court observes that Canzater provides no additional information concerning this alleged assault or evidence of the injuries that he allegedly received at this time. Further, he submits no evidence corroborating his affidavit about this alleged attack.



### 3. Medical Indifference

Canzater also alleges that the defendants were deliberately indifferent to his medical needs in failing to adequately treat his complaints of back pain. Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). A prisoner's disagreement as to the type of care he should receive does not state a claim for deliberate indifference. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Canzater has not made the requisite showing. As an initial matter, Canzater has failed to allege any personal involvement by any of the defendants in connection with his claims relating to medical indifference. Accordingly, these claims fail, as the defendants cannot be held liable solely because of their supervisory roles. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 129 S. Ct 1937, 1948 (2009). As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 1949. Indeed, the dissent in Iqbal opined that

PJG

"[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting).[4]

As stated above, Canzater must demonstrate that the defendants had actual knowledge of a substantial risk of harm to Canzater and disregarded that substantial risk. Farmer, 511 U.S. at 847. To establish a claim for deliberate indifference to a serious medical need against non-medical personnel such as the defendants, Canzater must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier, 896 F.2d at 854. Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the detainee. See id.

In this case, in addition to failing to allege any personal involvement by the defendants, Canzater has made no allegation that Defendants Bell, Hilton, or Oberman even had any knowledge of Canzater's medical concerns. With regard to Defendant Padula, Canzater alleges that at some point he notified Defendant Padula that he had been denied medical attention for several months, and Defendant Padula failed to respond to this request. Based on the evidence before the court, Canzater cannot demonstrate that these defendants have been deliberately indifferent. The defendants have submitted the affidavit of Brenda Dash-Fraizer, the medical records custodian with SCDC, and a compilation of Canzater's medical records from January 2009 through December 2009. (See Docket

---

[4] The court notes that even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisory liable for constitutional injuries inflicted by their subordinates).



Entry 37-11.) This compilation demonstrates that Canzater has received medical treatment for a variety of both physical and mental complaints on over thirty occasions from April 2009 through November 2009. (Id.) In response, Canzater simply states that this is untrue and that he "strongly disagrees" that he has received adequate treatment as he contends that he did not receive treatment for several months. This is insufficient to demonstrate that any of the defendants had knowledge of a substantial health risk—his injuries from the alleged assault at issue—and disregarded them.

    **4.    Qualified Immunity**

The defendants also assert that they are entitled to qualified immunity. The court agrees. Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). In this case, because Canzater has failed to establish that he was deprived of a constitutional right, the defendants are entitled to qualified immunity.

## RECOMMENDATION

Based on the above, the court recommends that Canzater's motion for summary judgment (Docket Entry 26) be denied and the defendants' motion for summary judgment (Docket Entry 37) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 9, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).